UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GARY W. FARRIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:24-cv-00898-ACL |
| LT. ADAM BENNETT, et al., | ) ) ) |
| Defendants. | ) ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on initial review of self-represented Plaintiff Gary W. Farris's amended complaint pursuant to 28 U.S.C. § 1915. For the following reasons, the Court will issue process on Plaintiff's claims against Defendants Adam Bennett, Augie Martin, and Olivia McGah in their individual capacities. The Court will dismiss without prejudice Plaintiff's claims against Defendant Julie Poirier and his official capacity claims against Defendants Adam Bennett and Olivia McGah.

**Background**

On initial review of Plaintiff's original complaint, the Court noted that Plaintiff had sued Defendants in their official capacities only. These official capacity claims were subject to dismissal for failure to state a claim upon which relief may be granted. Because Plaintiff's allegations were serious and he was self-represented,

the Court allowed him to file an amended complaint to cure the deficiency. This amended complaint is now before the Court on initial review.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed without full payment of the filing fee if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016).

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that

permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented litigants are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

### The Amended Complaint

Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging Defendants violated his constitutional rights when they delayed treating and then failed to adequately treat his serious medical condition at the Warren County Jail. Named as Defendants are the following officers and employees of the Jail: Adam Bennett (Lieutenant), Julie Poirier (Sergeant),[1] Augie Martin (Correctional Officer), and Olivia McGah (Nurse). Plaintiff sues Defendants Bennett and McGah in both their individual and official capacities, and Defendants Poirier and Martin in their individual capacities only.

Plaintiff states that on December 13, 2023, Officer Martin asked him if he wanted to be a trustee, which involved moving out of his cell in C-pod. Plaintiff states that he accepted the position, but did not want to move from C-pod until after the pod went to the commissary the next day. He owed another inmate, a federal detainee, commissary items and would be unable to get these items to the detainee

---

[1] Plaintiff spells Defendant Julie Poirier's last name as "Poirier" and "Poirer." For consistency, the Court will use the spelling Julie Poirier.

if he were to move pods. Martin told Plaintiff that if he would move pods that day, Martin would "make sure it got taken care [of]." Doc. [6] at 5. Plaintiff understood this to mean that Martin would somehow take care of the debt Plaintiff owed the federal detainee. Plaintiff agreed to the move. At some point before Martin took care of Plaintiff's debt, however, Martin stopped working at the Warren County Jail.

Plaintiff moved to H-pod and began working in the kitchen. In April 2024, however, Plaintiff was placed back in C-pod with the federal pretrial detainee. Unbeknownst to Plaintiff, Martin had not paid his debt as promised. The federal detainee remembered the unpaid debt and assaulted Plaintiff, breaking his jaw in several places. Plaintiff's jaw required reconstructive surgery using multiple plates and screws. Plaintiff states that his face is permanently scarred and disfigured and his "mouth does not work right." *Id.* He also sustained nerve damage. Plaintiff states that the federal inmate who assaulted him was known to have assaulted other inmates on numerous occasions.

After the assault, Plaintiff called for a medical emergency and was taken to the booking area, which was staffed by Defendant Poirier. Plaintiff states that Poirier did not call an ambulance immediately upon Plaintiff's arrival at booking. Rather, she contacted Deputy Burns to take Plaintiff to the hospital. Plaintiff estimated that he waited in the booking area for an hour before being transported to the hospital.

Deputy Burns transported Plaintiff to Washington Hospital, which was not equipped to handle his injury. After x-rays showed a compound fracture, Plaintiff was transferred to Mercy Hospital in St. Louis for surgery. On April 22, 2024, Plaintiff had two plates and several screws inserted in his jaw. The next day, he was discharged back to the Warren County Jail, where he was prescribed a liquid diet.

For the next six days, for each meal, Plaintiff was given six ounces of apple sauce, Cream of Wheat cereal, six ounces of Jell-O, six ounces of beef broth, and an eight-ounce diabetic shake. Plaintiff states that this meal was only 300 calories, and he was consuming only 900 calories a day. Plaintiff states that the policy at the Warren County Jail was to provide inmates with 3,100 calories per day.[2] Plaintiff lost approximately 23 pounds on this liquid diet. He states that Nurse McGah and Lieutenant Bennett were responsible for his diet. On April 30, 2024, after Plaintiff complained, the jail increased his portion size, but he was still served only Cream of Wheat, apple juice, Jell-O, beef broth, and a diabetic shake each day.

Plaintiff states that on May 9, 2024, his oral surgeon instructed the jail to serve him a soft diet. He states it took the jail nine days to follow this order. In all, Plaintiff states that he had the same meal three times per day for 21 days.

---

[2] The website for the Warren County Sheriff's Department states that the Warren County Jail menu "consists of a cold breakfast, a hot lunch, and a hot dinner totaling approximately 3,100 calories each day." See https://wcsdmo.net/jail-info/ (last visited Jun. 17, 2025).

On April 29, 2024, while his pain level was a 7 on a scale of 10, Nurse McGah took him off his prescription pain medication and gave him Tylenol and ibuprofen. He complained of pain to Nurse McGah on several occasions, but she said there was nothing that she could do. Between May 6, 2024 and May 23, 2024, Plaintiff submitted seven electronic medical requests stating that he was in severe pain. He received no response.

On May 9, 2024, Plaintiff's oral surgeon requested a follow-up visit in four weeks. Plaintiff did not see the oral surgeon for more than seven weeks.

Plaintiff alleges Defendants failed to protect him from a known violent inmate, and were deliberately indifferent to his nutritional and medical needs. For relief, he seeks more than $300,000 in damages.

**Discussion**

As an initial matter, because Plaintiff was a pretrial detainee at the time of the alleged violations, his claims of deliberate indifference fall under the Fourteenth Amendment, rather than the Eighth Amendment. *See Morris v. Zefferi*, 601 F.3d 805, 809 (2010). While the Eighth Circuit has not set a clear standard for pretrial detainees, it has applied the same "deliberate indifference" standard as applied to Eighth Amendment claims made by convicted inmates. *Id.*; *see also Christian v. Wagner*, 623 F.3d 608, 613 (8th Cir. 2010) ("The Eighth Amendment does not apply to pretrial detainees, but the Due Process Clause of the Fourteenth Amendment

imposes analogous duties on jailers to care for detainees."). For this reason, the Court will apply the same deliberate indifference standard of the Eighth Amendment to Plaintiff's claims brought under the Fourteenth Amendment.

>     (1)    *Individual Capacity Claims Against Defendants Adam Bennett, Julie Poirier, Augie Martin, and Olivia McGah*
>
>         (a)    *Defendant Augie Martin—Failure to Protect*

Plaintiff alleges Defendant Augie Martin agreed to take care of Plaintiff's debt to a fellow detainee, and did not do so. This resulted in the federal detainee, who was known to be violent, assaulting Plaintiff and breaking his jaw.

Although this situation is unique, liberally construed, Plaintiff alleges a failure to protect claim against Defendant Martin. Under the Due Process Clause of the Fourteenth Amendment, custodians of a pretrial detainee have a duty to take reasonable steps to protect the detainee from assault by other detainees. *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010). However, not every injury suffered by one prisoner at the hands of another prisoner translates into constitutional liability. *Whitson v. Stone Cty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010). "Rather, prison officials violate the [constitution] only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018).

Plaintiff alleges the federal pretrial detainee who assaulted him was known to be violent. Plaintiff expressed his concern about this violent inmate to Defendant

Martin, stating that he would not transfer pods before paying his debt to this inmate. Knowing the gravity of the situation, Martin assumed responsibility for this debt, but failed to honor it. As a result, the debt was left unpaid and the detainee retaliated against Plaintiff, assaulting him and breaking his jaw. Based on these facts, the Court finds that Plaintiff has stated a plausible claim that Defendant Martin knew of and disregarded an excessive risk to Plaintiff's safety. The Court will issue process on Plaintiff's failure to protect claim against Defendant Martin.

>    (b)    *Defendant Julie Poirier—Deliberate Indifference to a Serious Medical Need*

After the attack, Plaintiff called for a medical emergency and was taken to the booking area of the jail, which was staffed by Defendant Julie Poirier. Plaintiff alleges Poirier did not call an ambulance to transport him to the hospital, but rather contacted Deputy Burns for transport. Deputy Burns took Plaintiff to the hospital, but Plaintiff had to wait an hour.

Although deliberate indifference can include the intentional denial or delay of access to medical care, the Court cannot find Poirier's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021). "[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017).

Plaintiff's assault occurred on a Sunday, April 21, 2024 at approximately 8:30 p.m. It is reasonable that it took the deputy an hour to respond to Poirier's call to transport Plaintiff to the hospital. While an ambulance might have been a faster option, this alone does not establish deliberate indifference on the part of Poirier. For these reasons, the Court will dismiss Plaintiff's deliberate indifference claims against Defendant Poirier for failure to state a claim upon which relief may be granted.

      (c)    *Defendants Adam Bennett and Olivia McGah—Inadequate Nutrition Claims*

Plaintiff alleges Defendants Adam Bennett and Olivia McGah were responsible for his diet upon his return to the Warren County Jail. Prisoners have a right to nutritionally adequate food. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). While control of the diet is within the discretion of prison officials, the diet must be adequate. *Divers v. Dep't of Corrs.*, 921 F.2d 191, 194 (8th Cir. 1990). A plaintiff can demonstrate that his right to an adequate diet was violated by evidence "that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Ingrassia v. Schafer*, 825 F.3d 891, 897 (8th Cir. 2016); *see also Obama v. Burl*, 477 Fed. Appx. 409, 412 (8th Cir. 2012) (stating that plaintiff's allegations regarding constant hunger, small food portions, and weight loss were sufficient for purposes of preservice review); *Davis v. State of Missouri*, 389 Fed. Appx. 579, 579

(8th Cir. 2010) (stating that allegations that plaintiff lost nineteen pounds during eight-month stay in jail due to insufficient food were sufficient to survive preservice dismissal).

Here, Plaintiff alleges that from April 23 to April 30, his diet consisted of only 900 calories per day. He states that the Warren County Jail's policy was to provide inmates 3,100 calories per day. After his complaints, his serving size increased, but he was fed the same food for each meal until May 18, 2024. He lost 23 pounds. Additionally, his doctor instructed the jail to start him on a soft diet starting May 9, 2024, but this took the jail nine days to implement.

The Court finds that Plaintiff has stated a plausible claim against Defendants Bennett and McGah for failure to provide him with an adequate diet. Liberally construed, his nutritional needs were not being met by his 900 calorie diet and Defendants were not following their own policies or the doctor's orders. For these reasons, the Court will issue service on Defendants Bennett and McGah on Plaintiff's claims of inadequate nutrition.

      *(d)    Defendant Olivia McGah—Deliberate Indifference to Serious Medical Needs*

Plaintiff also alleges Defendant Nurse Olivia McGah took him off his prescription pain medication on April 29, 2024, eight days after his attack. He made numerous requests for pain medication to help with his severe pain, but was given

only Tylenol and ibuprofen, which did not control the pain. In addition, his follow-up visit with his oral surgeon was delayed by more than three weeks.

Liberally construed, Plaintiff has stated a plausible claim that Defendant Nurse McGah was deliberately indifferent to his serious medical needs when she denied him prescription medication for pain and delayed his visit to the oral surgeon. The Court will issue process on Defendant McGah on these claims.

>    (2)   *Official Capacity Claims Against Defendants Adam Bennett and Olivia McGah*

Finally, although Plaintiff has stated plausible claims against Defendants Bennett and McGah in their individual capacities, Plaintiff's official capacity claims against these Defendants will be dismissed. A "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). To prevail on his official capacity claims, therefore, Plaintiff must establish Warren County's liability for the alleged misconduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) ("A plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer and therefore must establish the municipality's liability for the alleged conduct.").

To state a claim for municipal liability under § 1983, a plaintiff must plead facts demonstrating that the defendants violated a constitutional right either "pursuant to official municipal policy" or as part of "a custom or usage with the

force of law." *Kelly*, 813 F.3d at 1075 (quoting *Ware v. Jackson Cty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998)). Plaintiff has not alleged Defendants Bennett and McGah acted in accordance with any policy or custom of Warren County. To the contrary, Plaintiff alleges his caloric intake of 900 calories per day violated the Warren County Jail's policy of providing inmates a diet of 3,100 calories per day. Nor has he suggested any alleged deliberate indifference to his medical needs was pursuant to an official policy or custom of Warren County. Under this standard, Plaintiff's amended complaint fails to state a § 1983 claim against Defendants Bennett and McGah in their official capacities. The Court will dismiss Plaintiff's official capacity claims against Bennett and McGah.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk of Court shall issue process on Plaintiff's amended complaint as to Defendants Adam Bennett, Augie Martin, and Olivia McGah in their individual capacities at the Warren County Jail, 104 West Main Street, Warrenton, Missouri 63383.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant Julie Poirier are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff's claims brought against Defendants Adam Bennett and Olivia McGah in their official capacities are

**DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

An Order of Partial Dismissal will accompany Opinion, Memorandum and Order.

Dated this 17th day of June, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE